ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Parsons Evergreene, LLC ) | ASBCA No. 61784 |
| ) | |
| Under Contract No. FA8903-04-D-8703 ) | |

APPEARANCES FOR THE APPELLANT: Douglas S. Oles, Esq.
James F. Nagle, Esq.
Adam K. Lasky, Esq.
Howard W. Roth III, Esq.
  Oles Morrison Rinker & Baker LLP
  Seattle, WA

APPEARANCES FOR THE GOVERNMENT: Jeffrey P. Hildebrant, Esq.
  Air Force Deputy Chief Trial Attorney
Michelle D. Coleman, Esq.
  Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE PROUTY
REGARDING ALLEGEDLY TARDY REQUESTS FOR PAYROLL RECORDS

As stated in footnote 1 of the majority opinion for ASBCA No. 58634 and in our order issued today on the matter, for reasons of clarity and judicial efficiency, we*issue this separate opinion under a new appeal number upon the subject of appellant, Parsons Evergreene, LLC's (PE's), demand for compensation of costs associated with the Air Force's (AF's) allegedly tardy requests for payroll records.

Judge Clarke, who presided over the hearing in this matter, believes, for those reasons set forth in his dissent, that the AF's failure to engage in a "prompt" investigation of the payroll matter should entitle PE to compensation pursuant to Federal Acquisition Regulation (FAR) 22.406-1. As we explain below, although we adopt the material findings of fact made by Judge Clarke's majority opinion in ASBCA No. 58634, concurrently filed today, PE's appeal based upon FAR 22.406-1 is denied.

---

* Because the two judges who reviewed Judge Clarke's original opinion in ASBCA
   No. 58634 (Judges Shackleford and Prouty) came to a different conclusion than
   Judge Clarke on the payroll review issue, the remaining two judges from
   Judge Clarke's division were asked to consider it, consistent with Board practice and
   procedure. As reflected below, they concurred with Judges Shackleford and Prouty.

We deny this appeal because FAR 22.406-1 does not provide a remedy to a contractor for the government's untimely investigation of complaints relating to labor standards. Under longstanding law:

> In order for a private contractor to bring suit against the Government for violation of a regulation, that regulation must exist for the benefit of the private contractor.

*Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1365 (Fed. Cir. 2000) (citing *Cessna Aircraft Co. v. Dalton*, 126 F.3d 1442, 1451 (Fed. Cir. 1997); and *Rough Diamond Co. v. United States*, 351 F.2d 636, 640-42 (Ct. Cl. 1965)). *Cessna* was particularly clear:

> The primary intent of a statute or regulation must be to protect or benefit a class of persons in order for that class to be able to bring suit against the government for violating the statue or regulation.

126 F.3d at 1451 (citing *Rough Diamond*, 351 F.2d at 640, 642). To be sure, a regulation may be intended to benefit more than one class of persons, *see, e.g., Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1314 (Fed. Cir. 2011) (performance evaluation regulation meant to benefit both government and contractor), but *Freightliner* and *Cessna* make clear that the operative test is not that application of the regulation merely be to the benefit of the contractor in the particular controversy for which it is bringing suit, but that the contractor has been an intended beneficiary all along.

With this in mind, we turn to the text of FAR 22.406-1. That FAR provision is entitled, "Policy," which underscores, to us, that the section is meant as a broad explanation of later FAR provisions as well as an instruction for contracting agencies about the goals of their labor standards programs. Subsection (a) of FAR 22.406-1 provides, in full:

> *General.* Contracting agencies are responsible for ensuring the full and impartial enforcement of labor standards in the administration of construction contracts. Contracting agencies shall maintain an effective program that shall include –
>
> (1) Ensuring that contractors and subcontractors are informed, before commencement of work, of their obligations under the labor standards clauses of the contract;

2

(2) Adequate payroll reviews, on-site inspections, and employee interviews to determine compliance by the contractor and the subcontractors, and prompt initiation of corrective action when required;

(3) Prompt investigation and disposition of complaints; and

(4) Prompt submission of all reports required by this subpart.

The remainder of FAR 22.406-1, subsection (b), directs the issuance of preconstruction letters and the arrangement of preconstruction conferences with contractors.

Reviewing the full text confirms our view that the FAR's requiring "prompt investigation and disposition of complaints," *see* FAR 22.406-1(a)(3), was, at most, for the benefit of labor, for whose advantage labor standards are required to be enforced, not for the benefit of the contractor. *See Freightliner*, 225 F.3d at 1365. Moreover, nothing in the language of the FAR provision comes close to suggesting that its "primary intent" was to "protect or benefit" the contractor class. *See Cessna*, 126 F.3d at 1451.

Alternatively, we could conclude that FAR 22.406-1, in setting out general policies for contracting agencies to follow, but not specifics, was meant merely for the benefit of the government as a "housekeeping regulation," providing guidance to government employees about how to establish their labor standards programs, and thus its violation gives no class any enforceable rights. *See, e.g., Hartman v. Nicholson*, 483 F.3d 1311, 1315-16 (Fed. Cir. 2007). Ultimately, we need not decide between whether labor or the government was the intended beneficiary to determine that the subject provision was not intended for the benefit of the contractor. Creation of a cause of action against the government does not occur by happenstance, and there is not enough here to create one anew. Thus, we respectfully disagree with our colleague and deny the portion of PE's appeal seeking compensation for the allegedly tardy AF request for payrolls.

Dated: September 5, 2018

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

(Signatures continued)

3

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

ALEXANDER YOUNGER
Administrative Judge
Armed Services Board
of Contract Appeals

I dissent (see separate opinion)

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

## DISSENTING OPINION BY ADMINISTRATIVE JUDGE CLARKE REGARDING ALLEGEDLY TARDY REQUESTS FOR PAYROLL

I respectfully disagree with my colleagues.

PE claims $762,130 for the government's violation of FAR 22.406-1 Policy, dealing with enforcement of labor standards, in particular payroll reviews. In order for a contractor to have a cause of action against the government for violation of a regulation, it must prove that the regulation exists for the benefit of the contractor. *Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1365 (Fed. Cir. 2000).

FAR 22.406-1 requires that if a problem is found during payroll reviews, on-site inspections and employee interviews there will be "prompt initiation of corrective action," "Prompt investigation and disposition of complaints," and "Prompt submission of all reports required by this subpart" (finding 201).* I infer from this that the payroll reviews themselves must also be prompt or the entire regulatory scheme becomes meaningless.

PE and its subcontractors submitted payrolls commencing in 2005 (finding 203). The Air Force (AF) "sampled" payrolls and found no problems until the first labor interview on 6 December 2007 (*id.*). The interview caused the AF to look closer at the payrolls. This started the lengthy process of the AF requiring PE to resubmit past payrolls and respond to AF questions between 2008 and as late as 2012 (findings 203-07). The AF took beneficial occupancy on 11 September 2008 (finding 197). I accept PE's position that the AF's waiting to commence interviews and detailed payroll reviews until 2008, when the contract was almost over, made it much more difficult and expensive for PE to comply.

PE has proven that the government failed to conduct payroll reviews promptly and as a result it was much more difficult and expensive for PE to respond. I conclude that proof of such direct and predictable harm to a contractor is prima facie evidence that a regulation, in this case FAR 22.406-1, exists for the benefit of the contractor. The government is then required to come forward with evidence to contest the prima facie case. If the government fails to do so, the prima facie case stands uncontroverted and the party with the burden of proof will have established its case by a preponderance of the evidence. *Environmental Safety Consultants, Inc.*, ASBCA No. 53485, 05-1 BCA ¶ 32,903 at 163,019. In this case, the government presented no evidence or argument on the benefit issue. I agree with my colleagues that FAR 22.406-1 also benefits workers,

---

* References to findings are to the companion decision issued simultaneously with this decision.

but it is unlikely workers will ever avail themselves of the cause of action so my colleagues concession is academic. I sustained this claim and awarded PE $571,598 for the government's violation of FAR 22.406-1.

Dated: September 5, 2018

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61784, Appeal of Parsons Evergreene, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals